CARLTON, J., for the Court:
 

 ¶ 1. Teresa Green and Samuel Nickel
 
 [1]
 
 appeal the December 5, 2008, order of Hancock County Chancery Court denying their petition to set aside an amended judgment entered in the Hancock County Youth Court terminating their parental rights with respect to four minor children.
 

 FACTS
 

 ¶ 2. Teresa is the biological mother of Blair Nickel (Blair), born in August 1992, Casey Green (Casey), born in November 1997, Patty Green (Patty), born in September 1999, and Sara Green (Sara), born in December 2001. Samuel is the biological father of Blair, Patty, and Sara.
 
 [2]
 
 On December 13, 2001, DHS received a report from Hancock Medical Center that Sara was born with marijuana and Valium in her system. Drug testing performed on Teresa at the same time also revealed marijuana and Valium. After an investigation, DHS determined that Teresa and Samuel were unable to support or care for the children in their care. On December 17, 2001, DHS took custody of Sara. On December 19, 2001, DHS took custody of Blair, Casey, and Patty. On February 20, 2002, the youth court adjudicated Sara to be an abused child. The youth court further found that Blair, Casey, and Patty were neglected. DHS placed the children in the custody of their paternal aunt and uncle.
 

 ¶ 3. DHS initiated a service agreement with Teresa and Samuel in an effort to
 
 *662
 
 reunite them with their children. Teresa’s service agreement required her to visit with her children; provide proof of her attendance at ninety Alcoholics and Narcotics Anonymous meetings within ninety days; submit to random drug screening; pay child support; complete a counseling program; maintain a home; provide proof of her social security disability income; and comply with the DHS family-preservation program, including completion
 
 of
 
 parenting classes. Samuel’s service agreement with DHS required him to complete the same tasks as Teresa, with the exception of showing proof of social security income. The youth court ordered Teresa and Samuel to complete the service agreements with DHS. However, neither Teresa nor Samuel satisfied their obligations under the service agreements. Pursuant to an order of the youth court, DHS filed a petition in Hancock County Chancery Court on April 22, 2003, to terminate the parental rights of Teresa and Samuel. On September 20, 2003, DHS amended them petition to correct Sara’s date of birth.
 

 ¶ 4. The chancery court held a trial on March 30-31, 2004. Evidence at the trial to terminate Teresa’s and Samuel’s parental rights revealed a pattern of drug use and an inability to care for the four children. Teresa tested positive for drug use in February 2002. Testimony from Connie Gipson, a social worker familiar with the case, revealed that Teresa tested positive for benzodiazepines and Oxazepam, used marijuana during all of her pregnancies, and tested positive for cocaine in September 2003. Samuel tested positive for marijuana in April and August 2002. Furthermore, Gipson testified that Samuel tested positive for cocaine use in December 2003.
 

 ¶ 5. Blair, the oldest of the four children, testified that her mother did not require her to attend school; therefore, Blair made poor grades while in her mother’s custody. Blair further testified that Teresa and Samuel told her they used marijuana and cocaine. Blair recounted an instance where Teresa forced Blair to hide marijuana in Blair’s underwear to avoid detection if the family were stopped by the police. Blair recounted another instance in which her mother convinced Blair to supply a urine sample for a drug test so that she would have a clean sample.
 

 f 6. Dr. Donald Matherne, a clinical psychologist, conducted psychological testing of Teresa and Samuel. Dr. Matherne noted that Teresa was unemployed and subject to drug relapse. Further, in Dr. Matherne’s opinion, Teresa was not mentally retarded, as she claimed in order to receive disability benefits. Dr. Matherne also determined that Samuel could not provide a stable environment for the children, nor could he support them financially. Dr. Matherne believed that the children should remain in the custody of their paternal aunt and uncle.
 

 ¶ 7. Ann Clark Lazzara, the guardian ad litem appointed for the children, testified at the hearing. She recommended that the termination of parental rights would be in the children’s best interests. Lazzara met with all four children and with the paternal aunt and uncle. She reviewed the case file and spoke with the two older children’s teachers. According to Laz-zara’s testimony, none of the children showed any interest in returning to their parents.
 

 ¶ 8. After hearing testimony and reviewing the evidence presented, including the guardian ad litem’s report, the chancery court made a bench ruling to terminate Teresa’s and Samuel’s parental rights with respect to the four minor children. In its bench ruling, the chancery court stated the following:
 

 It’s not until the last minute that anyone has made any effort to do anything that
 
 *663
 
 comes close to attempting to comply with the service agreement, and the service agreements have not been complied with. What troubles me most is that there appears to be an extreme and deep-seated antipathy of the children towards being reunited with their parents for anything other than visitation.
 

 ¶ 9. After the bench ruling, but before entry of judgment, Teresa filed a motion for rehearing. The chancellor’s judgment terminating parental rights was filed on October 22, 2004. The chancellor filed an amended judgment terminating parental rights on May 9, 2006. The amended judgment corrected a typographical error regarding Sara’s date of birth. More than one year after the amended judgment was entered, Teresa filed a motion to set aside the amended judgment with the assistance of legal counsel. After reviewing the matters Teresa raised in her motion to set aside the amended judgment, the chancery court found that no relief was warranted under the circumstances. Notably, Teresa was represented by counsel at the hearing on her motion to set aside the amended judgment and at the appeal before this Court.
 

 ¶ 10. On appeal, Teresa and Samuel argue that the chancery court deprived them of due process by not appointing counsel to represent them during the termination of parental rights proceedings in chancery court. In their statement of the issues, Teresa and Samuel state that the chancery court erred in terminating their parental rights. However, they neither provide argument nor provide any case law for this Court to consider on appeal with respect to that assignment of error. Therefore, this Court will only address the issue of due process. Furthermore, while the chancellor’s authority to consider the assignments of error under Mississippi Rule of Civil Procedure 60(b)(6) is arguable, we will nonetheless address the due-process issue in this opinion.
 

 Whether the chancery court denied Teresa and Samuel due process by not appointing counsel to represent them throughout the proceedings.
 

 ¶ 11. Teresa and Samuel assert that their right to due process was violated by the chancery court’s failure to appoint counsel to represent them throughout the termination proceedings. Teresa and Samuel cite
 
 Lassiter v. Department of Social Services of Durham County, North Carolina,
 
 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) to support their assertion that they were entitled to court-appointed counsel throughout the proceedings.
 

 ¶ 12. “This Court’s scope of review of the findings of a chancellor in domestic relations matters is limited. The findings of the chancellor will be overturned on appeal only if manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard. No finding will be disturbed or set aside if supported by substantial, credible evidence.”
 
 Goodin v. Dep’t of Human Servs., State of Miss.,
 
 772 So.2d 1051, 1054 (¶ 6) (Miss.2000) (internal citations and quotation omitted). However, whether Teresa and Samuel received due process is a question of law, which this Court will review de novo.
 
 J.C.N.F. v. Stone County Dep’t. of Human Servs.,
 
 996 So.2d 762, 770 (¶ 27) (Miss.2008).
 

 ¶ 18. Teresa and Samuel assert that under
 
 Lassiter,
 
 the chancery court should have appointed counsel to represent them throughout the termination proceeding. In
 
 Lassiter,
 
 the United States Supreme Court upheld a trial court’s termination of parental rights in which the trial court failed to appoint counsel for an indigent parent.
 
 Lassiter,
 
 452 U.S. at 21-22, 101 S.Ct. 2153. In upholding the trial court’s
 
 *664
 
 decision, the Supreme Court stated the following:
 

 [T]he petition to terminate parental rights contained no allegations of neglect or abuse upon which criminal charges could be based; no expert witnesses testified; the case presented no especially troublesome points of law; [and] the presence of counsel could not have made a determinative difference for petitioner[.]
 

 Id.
 
 at 19, 101 S.Ct. 2153. We turn to review the application of
 
 Lassiter
 
 by the Mississippi Supreme Court and as applied to the unique facts of this case.
 

 ¶ 14. In
 
 K.D.G.L.B.P. v. Hinds County Department of Human Services,
 
 771 So.2d 907, 910 (¶¶ 11-12) (Miss.2000), the supreme court discussed
 
 Lassiter
 
 in a case with similar facts to the case at bar. The supreme court in
 
 K.D.G.L.B.P.
 
 stated that “[o]ne of the most important factors to be considered in applying the standards for court appointed counsel is whether the presence of counsel would have made a determinative difference.”
 
 Id.
 
 at (¶ 12). Further, relying on the United States Supreme Court’s holding in
 
 Lassiter,
 
 our supreme court stated that the appointment of counsel in termination proceedings is wise but not mandatory, and courts should determine the need for court-appointed counsel on a case-by-case basis.
 
 Id.
 

 ¶ 15. In finding no violation of the parent’s due-process rights, the supreme court in
 
 K.D.G.L.B.P.
 
 noted that the mother received a fair and adequate hearing; she had received ample notice of the hearing and could have found an attorney; she never asked the court for a continuance in order to find counsel; she informed the court that she wished to proceed without an attorney; and she never informed the court that her financial situation prevented her from securing counsel.
 
 Id.
 
 at 911 (¶14).
 

 ¶ 16. Similarly, in the case at bar, Teresa never mentioned to the chancery court that she lacked the financial means to hire an attorney to represent her. In fact, prior to the hearing, Teresa enjoyed the representation of an attorney. Her attorney withdrew approximately one week pri- or to the hearing for reasons unclear from the record. Teresa informed the chancery court that she wished to proceed with the hearing, and she did not seek a continuance in order to seek substitute counsel. Samuel was represented by counsel at the trial.
 

 ¶ 17. Furthermore, the presence of an attorney would not have made a determinative difference in the outcome of the proceeding, as evidenced by the chancellor’s denial of the motion to set aside the amended judgment. Significantly, Teresa was represented by counsel at the hearing on the motion to set aside the amended judgment, and after considering her motion, the chancellor found her arguments lacked merit. The evidence presented at the termination hearing overwhelmingly supported the chancellor’s decision to terminate Teresa’s parental rights. The children showed no interest in returning to the custody of their parents. Sara, the youngest child, was born with drugs in her system. Teresa continued to use and tested positive for drugs even after DHS took custody of her children. Both Teresa and Samuel failed to complete their service agreements with DHS. At the time of the hearing, Teresa remained unemployed, lacked a stable home for the children, had child-support arrearages, and failed to complete her required Alcoholics and Narcotics Anonymous classes. Both the guardian ad litem and Dr. Matherne informed the trial court that the children should not be returned to them parents’ custody. Dr. Matherne found Samuel incapable of providing a stable home envi
 
 *665
 
 ronment and that he could not support the children financially. Additionally, the chancery court considered Teresa’s belated motion to set aside the amended judgment, which Teresa submitted with the assistance of counsel. Upon consideration of that motion, the chancellor declined to set aside the amended judgment.
 

 ¶ 18. Teresa’s post-trial motion, submitted with the assistance of legal counsel, reflects that the presence of a court-appointed attorney would not have made a determinative difference in the chancery court’s decision to terminate Teresa’s and Samuel’s parental rights. Therefore, we find no error in the chancery court’s judgment.
 

 ¶ 19. THE JUDGMENT OF THE HANCOCK COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE AND MAXWELL, JJ., CONCUR. ROBERTS, J., CONCURS IN PART AND IN THE RESULT. GRIFFIS, J., CONCURS IN RESULT ONLY.
 

 [1]
 

 . Because of the confidential nature of this case and in order to protect the privacy of the minor children involved, we have used fictitious names for the parties and for the minor children.
 

 [2]
 

 . Both the original and the amended petitions to terminate parental rights name an alleged putative father for Casey. However, the petitions state that DHS was unable to locate him after diligent inquiry. The chancery court terminated Casey’s father’s parental rights. However, he is not a party to this appeal.